UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MATTHEW GIORGIO and | * | |
| COLIN TRAVER, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 12-11171-JLT |
| | * | |
| HAROLD W. CLARKE, MICHAEL | * | |
| THOMPSON, DUANE MACEACHEARN, | * | |
| GARY RODEN, LISA JACKSON, and | * | |
| STEVEN DUXBURY, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

July 31, 2013

TAURO, J.

I.  Introduction

Plaintiffs Matthew Giorgio and Colin Traver allege that Defendants Harold Clarke, Michael Thompson, Duane MacEachern, Gary Roden, Lisa Jackson, and Steven Duxbury, all officials with the Massachusetts Department of Correction, violated their First Amendment right to the free exercise of their religion. Plaintiffs bring this suit for damages against Defendants in their individual capacities. Before the court are Defendants' Motion to Dismiss [#18] and Plaintiffs' Motion to Amend [#28] the complaint. For the reasons below, the court allows the case to proceed only against Defendants Jackson and Duxbury.

II.  Factual Background[1]

---

[1] The court presents the facts drawn from Plaintiffs' Complaint [#1] in the light most favorable to Plaintiffs.

1

Plaintiffs are Native Americans formerly incarcerated in Massachusetts. Giorgio was released from custody in March 2010. Traver was released in July 2010.[2]

Prior to incarceration, Plaintiffs practiced Native American religious rites, including sweat lodge ceremonies, use of prayer feathers and other religious artifacts, sage cleansing, and smudging ceremonies. While incarcerated, Plaintiffs were denied access to these ceremonies and artifacts, which they claim form an essential component of their religious beliefs.[3] Plaintiffs filed inmate grievances and appealed each denial to the correctional facilities' superintendents.[4] On July 9, 2009, they brought a grievance against Defendants Jackson and Duxbury for interfering with their right to worship. Although the grievance was approved, Jackson and Duxbury failed to return Plaintiffs' religious artifacts to them.[5]

According to Plaintiffs, the regulations denying them access to key Native American rites bore no rational relation to any legitimate concern of rehabilitation, institutional order, or security. In fact, they claim that the Department of Correction had expressly allowed these rites in the past. Plaintiffs also claim that Defendants could have accommodated their religious practices without any additional supervision, threats to prison security, or perceived favoritism.[6]

Each plaintiff brings a single count against each defendant individually for violation of his

---

[2] Compl. "Gen. Allegations" ¶¶ 1-2 [#1].

[3] Compl. "Factual Allegations" ¶¶ 2-5.

[4] Compl. "Factual Allegations" ¶ 8.

[5] Compl. "Count VII" ¶ 2; Compl. "Count VIII" ¶ 2; Compl. "Count XV" ¶ 2; Compl. "Count XVI" ¶ 2.

[6] Compl. "Factual Allegations" ¶¶ 5-6.

constitutional rights.

III.   Discussion

    A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include factual allegations that demonstrate a plausible claim for relief.[7] The court "must 'take all factual allegations as true and draw all reasonable inferences in favor of the plaintiff.' "[8] Nevertheless, the court need not accept the plaintiff's legal conclusions, and the plaintiff must provide more than "labels and conclusions or a formulaic recitation of the elements of a cause of action."[9]

    B.   Defendants' Motion to Dismiss

Defendants raise five arguments in support of dismissal. They argue both that the complaint fails to plausibly allege entitlement to relief as required by the Supreme Court in Bell Atlantic Corp. v. Twombly[10] and that the complaint fails to state a claim for relief under the First Amendment. They assert that Plaintiffs cannot recover damages for claims brought against them in their official capacity and that they have qualified immunity for claims brought against them in their individual capacity. Finally, Defendants argue that Plaintiffs failed to allege any facts supporting supervisory liability under 42 U.S.C. §1983.

        i.   Sufficiency of the Complaint

---

[7] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58 (2007).

[8] Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007) (emphasis omitted)).

[9] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

[10] 550 U.S. 544 (2007).

The court concludes that, although Plaintiffs' complaint borders on insufficiency, it satisfactorily states a claim under the First Amendment against Defendants Jackson and Duxbury. The First Amendment permits restrictions on prisoners' free exercise rights that are "reasonably related to legitimate penological interests."[11] In determining a regulation's constitutionality, the court must consider: 1) whether there is a valid, rational connection between the regulation and the legitimate government interest justifying it; 2) whether alternative means to exercise the right exist; 3) the impact of accommodating the right on prison resources; and 4) the absence of alternatives.[12] The prisoner bears the burden of persuasion when contesting the reasonableness of a prison regulation.[13]

Plaintiffs allege that they practiced their religion prior to incarceration and that the prohibited rites comprised a central part of their sincerely held beliefs. Additionally, they identified the specific rites to which they lacked access: sweat lodge ceremonies, use of prayer feathers, sage cleansing, and smudging ceremonies. Although Plaintiffs bear the burden to prove this denial of access unreasonable, Defendants have not yet offered any justification for the regulations.[14] Without further development of the record, the court cannot conclude, even granting full

---

[11] Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)); see Beard v. Banks, 548 U.S. 521, 528-29 (2006).

[12] Kuperman, 645 F.3d at 74 (citing Turner, 482 U.S. at 89-90).

[13] Overton v. Bazzetta, 539 U.S. 126, 132 (2003); Kuperman, 645 F.3d at 74.

[14] See Knapp v. Kench, No. 11-cv-491-PB, 2012 WL 2061701, at *3 (D.N.H. May 14, 2012), report & recommendation approved, No. 11-cv-491-PB, 2012 WL 2061598, at *1 (D.N.H. June 6, 2012).

deference to Defendants,[15] that the regulations at issue related reasonably to legitimate penological interests.

Additionally, Plaintiffs allege specific conduct by Defendants Jackson and Duxbury. According to Plaintiffs, Jackson and Duxbury failed to return religious items after approval of Plaintiffs' grievance. Jackson and Duxbury allegedly participated directly in the unconstitutional conduct, and Plaintiffs' claims against them may proceed.[16]

This same analysis, however, shows that Plaintiffs have failed to state a claim against Defendants Clarke, Thompson, MacEachearn, and Roden. Plaintiffs have failed to provide any facts tying their alleged constitutional injuries to these Defendants. Plaintiffs may not use the doctrine of *respondeat superior* to hold Defendants liable under Section 1983.[17] "[S]upervisory liability lies only where an 'affirmative link' between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation."[18] The supervisor's conduct must amount to "supervisory encouragement, condonation or acquiescence[,] or gross negligence of the supervisor amounting

---

[15] O'Lone v. Estate of Shabazz, 482 U.S. 342, 353 (1987) ("We take this opportunity to reaffirm our refusal, even where claims are made under the First Amendment, to 'substitute our judgment on . . . difficult and sensitive matters of institutional administration' for the determinations of those charged with the formidable task of running a prison." (quoting Block v. Rutherford, 468 U.S. 576, 588 (1984))).

[16] See Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) ("Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization.").

[17] Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 209 (1st Cir. 1990).

[18] Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009) (citations and internal quotation marks omitted).

to deliberate indifference."[19] The court must assess the potential liability of each defendant separately.[20]

With the exception of Defendants Jackson and Duxbury, discussed earlier, Plaintiffs have not alleged any specific conduct by any Defendant. Without such specific allegations against Defendants Clarke, Thompson, MacEachern, and Roden, the court has no basis to conclude that their actions either constituted encouragement, acquiescence, or gross negligence or were affirmatively linked to the alleged constitutional violations. Consequently, the court must dismiss the claims against Clarke, Thompson, MacEachern, and Roden.

      ii.      Qualified Immunity

Because the court concludes that Plaintiffs have sufficiently stated a claim against Defendants Jackson and Duxbury, it must consider whether Jackson and Duxbury have qualified immunity.[21] A court should address qualified immunity "at the earliest possible stage in litigation."[22] In evaluating entitlement to qualified immunity, the court must decide: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if

---

[19] Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012) (alteration in original) (quoting Welch v. Ciampa, 542 F.3d 927, 937 (1st Cir. 2008)).

[20] Id.

[21] Although Defendants correctly note that Plaintiffs cannot seek damages against them in their official capacities, the complaint does not bring any claims against them in their official capacities.

[22] Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

6

so, whether the right was 'clearly established' at the time of the defendant's alleged violation."[23] The second question turns on (1) "whether the contours of the constitutional right were sufficiently clear at the time of the alleged conduct" and (2) "whether, under the particular facts of the case, a reasonable officer would have understood that his behavior violated that clearly established right."[24] In sum, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional."[25]

On the current record, the court has insufficient information to resolve the qualified immunity question. Whether Plaintiffs can show a constitutional violation depends on whether they can successfully challenge Defendants' as-yet-to-be asserted justifications of the prison regulations. And whether Defendants had "fair warning" that their conduct was unconstitutional will depend on the justifications advanced. The court can better make these determinations at summary judgment.

C.  Plaintiffs' Motion to Amend

Plaintiffs move to amend the complaint to add a claim against Defendants pursuant to the Religious Land Use and Institutionalized Persons Act (42 U.S.C. §§ 2000cc, *et seq.*) ("RLUIPA") and to specify the dates that they filed grievances. "The court should freely give leave [to amend]

---

[23] Maldonado v. Fontanes, 568 F.3d 263, 268-69 (1st Cir. 2009) (citing Pearson, 555 U.S. at 232).

[24] Sanchez v. Pereira-Castillo, 590 F.3d 31, 52-53 (1st Cir. 2009).

[25] Maldonado, 568 F.3d at 269 (citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

when justice so requires."[26] Even so, the court need not allow amendment if the amended complaint would still fail to state a claim for which relief could be granted.[27]

Plaintiffs may amend the complaint as to Defendants Jackson and Duxbury. Because the Proposed Amended Complaint [#29] does not correct the factual deficiencies already discussed as to Defendants Clarke, Thompson, MacEachern, and Roden, Plaintiffs may not offer the amended complaint against these defendants.

IV.     Conclusion

For the reasons stated, Defendants' Motion to Dismiss [#18] is ALLOWED IN PART and DENIED IN PART. Plaintiffs' Motion to Amend [#28] is also ALLOWED IN PART and DENIED IN PART. Plaintiffs may proceed against only Defendants Jackson and Duxbury for violations of the First Amendment and RLUIPA.[28]

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge

---

[26] Fed. R. Civ. P. 15(a)(2).

[27] Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).

[28] The court notes that, although the First Circuit has declined to rule on the issue, a judge in this district recently concluded that a plaintiff could not bring a RLUIPA claim for damages against officials in their individual capacities. See Cryer v. Spencer, No. 11-11953-PBS, 2013 WL 1192354, at *6-7 (D. Mass. Mar. 21, 2013). Because Defendants here did not properly raise this argument in their opposition to Plaintiffs' motion to amend, this court takes no position at this time on whether Plaintiffs' added RLUIPA claim could survive a motion to dismiss.