UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

MATTHEW GIORGIO AND
COLIN TRAVER

      Plaintiffs,

v.                                      Civil Action No. 12-11171-LTS

LISA JACKSON, and
STEVEN DUXBURY,

      Defendants.

_____

## MEMORANDUM AND ORDER

April 1, 2015

SOROKIN, J.

I. INTRODUCTION

Plaintiffs, Matthew Giorgio and Colin Traver, ("Plaintiffs"), bring suit against Lisa Jackson ("Jackson") and Steven Duxbury ("Duxbury"), (collectively "Defendants") on the grounds they were denied their constitutional and statutory rights to engage in Native American religious ceremonies while incarcerated at MCI-Pondville. Specifically, Plaintiffs allege violations of the First and Fourteenth Amendments of the Constitution in accordance with 42 U.S.C. § 1983, and 42 U.S.C. § 2000cc-1 (the Religious Land Use and Institutionalized Persons Act or "RLUIPA"). Defendants now move for summary judgment on the grounds that the doctrine of qualified immunity bars Plaintiffs' constitutional claims, and that monetary damages are not available under RLUIPA. For the reasons set forth below, Defendants' Motion for Summary Judgment is ALLOWED in part, and DENIED in part.

II. TRAVEL OF THE CASE

On June 28, 2012, Plaintiffs, former inmates at MCI-Pondville, filed this suit against several prison administrators, claiming they were denied their right to engage in Native American religious ceremonies, in violation of the First and Fourteenth Amendments of the Constitution. Doc. No. 29 at 1-4.[1] Plaintiffs' Amended Complaint arises out of four alleged violations by prison officials of their right to free exercise by: (1) removing ceremonial feathers from Plaintiffs' cells; (2) refusing to make available a sweat lodge for religious ceremonies; (3) denying Plaintiffs permission to attend off-site Wampanoag pow-wows; and (4) restricting Plaintiffs' participation in smudging ceremonies. Doc. No. 29 at 4-7. Plaintiffs seek monetary damages from Defendants in their individual capacities only. Doc. No. 29 at 7-15.

On February 7, 2013, Defendants filed a Motion to Dismiss for Failure to State a Claim, and Judge Tauro granted the motion, in part, but allowed the case to proceed only against Jackson and Duxbury. Giorgio v. Clarke, No. 12-11171-JLT, 2013 WL 3965419, at *1 (D. Mass. July 31, 2013).[2] Judge Tauro determined the question, which could not be answered on a motion to dismiss, was whether "the state of law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." Id. (citing Maldonado v. Fontanes, 568 F. 3d 263, 269 (1st Cir. 2009) (internal citation omitted)). Judge Tauro also allowed

---

[1] Citations are to documents that are part of the docket and viewable via the Court's electronic filing system. Where page numbers are cited, references are to the numbering placed at the top of each page by the electronic filing system.

[2] Defendants, Harold W. Clarke, Michael Thompson, Duane MacEachearn, and Gary Roden were dismissed from the case because Plaintiffs failed to provide facts tying them to the alleged unconstitutional acts, and as such, Judge Tauro found that their supervisory conduct did not give rise to liability under § 1983. Id. at *5-*6.

Plaintiffs to amend their Complaint in order to add a RLUIPA claim against Jackson and Duxbury. Id.

Defendants answered the Amended Complaint, Doc. No. 29, and the parties engaged in discovery. Defendants have now moved for Summary Judgment on all remaining claims: Count V ( Matthew Giorgio's Claims Against Jackson); Count VI (Matthew Giorgio's Claims Against Duxbury); Count XI (Colin Traver's Claims Against Jackson); and Count XII (Colin Traver's Claims Against Duxbury). Plaintiffs have Cross-Moved for Partial Summary Judgment as to liability only.[3]

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Further, a court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrell, 477 U.S. 317, 322 (1986). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore

---

[3] Although the Docket contains two Motions by Plaintiffs for total and partial summary judgment, Plaintiffs make no argument for total summary judgment and the two filings (Doc. Nos. 78 & 79) are identical. They seek summary judgment as to liability only. For the reasons set forth herein, Plaintiffs' Motion for Summary Judgment as to Liability is DENIED.

"conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina-Munoz v. R.I. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

"There must be sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). For a factual dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc., 43 F.3d at 735 (internal citation omitted).

IV. FACTS

A. Defendants' Statement of Undisputed Material Facts Are Admitted

Local Rule 56.1 ("Local Rule 56.1") of the United States District Court for the District of Massachusetts, states that motions for summary judgment must include "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions, and other documentation." Local Rule 56.1. Failure to include such a statement constitutes grounds for denial of the motion. Id. Oppositions to summary judgment must similarly be accompanied by a statement of material facts to which the opposing party contends that there exists a genuine issue to be tried, with supporting references to the record. Id. All referenced documents must be filed as exhibits to the motion or

opposition. Id. Material facts set forth in the moving party's statement *are deemed admitted* for purposes of summary judgment if not controverted by an opposing statement. Id.

The Defendants submitted a Statement of Material Undisputed and Material Facts pursuant to Local Rule 56.1 on October 8, 2014. Doc. No. 66 at 2-5. Plaintiffs filed a Joint Motion in Opposition to the Defendants' Motion and in Support of the Plaintiffs' Motion for Partial Summary Judgment as to Liability on October 8, 2014, but they did not file a statement of disputed material facts in response to the Defendants' statement of undisputed facts. As such, all material facts set forth in the Defendants' Statement are deemed admitted for purposes of summary judgment pursuant to Local Rule 56.1. Plaintiffs did submit affidavits and excerpts of deposition transcripts, and this Court has considered the facts attested to therein.

The facts from Defendants' Statement of Facts which are deemed admitted include:

1. Plaintiff Matthew Giorgio ("Giorgio") was incarcerated with the DOC from January, 2007, to March, 2010.

2. Plaintiff Colin Traver ("Traver") was incarcerated with the DOC from February, 2007, to July, 2010. Traver was incarcerated at PCC from May 12, 2009 to December 21, 2009, as a pre-release inmate.

3. PCC is a Department of Correction facility housing minimum and pre-release inmates, located in Norfolk, MA.

4. Lisa Jackson served as the PCC Deputy Superintendent from April, 2007, to September, 2011.

5. Steven Duxbury served as the PCC Director of Classification and Programs from September, 1997, to March, 2010.

6. In 1999, the DOC developed a Religious Services Handbook ("Handbook") to assist administrators in evaluating inmate religious requests. The Handbook outlines commonly

accepted practices of the recognized faiths, including Native American practices. The Handbook permits corporate worship items for a Native American inmate community, known as a circle, including: a ceremonial pipe, a smudge bowl, a drum, a drum stick, a rattle, a flute, a talking stick, ceremonial feathers, kinnik-kinnik, cedar, sage, and sweet grass. Inmates can keep some Native American items in their personal property, including: a headband, prayer beads, medicine bags, healing stones, sacred path cards, quilled wheels, three-tier chokers, a one-piece pipe for the pipe ceremony, and books on Native American spiritual practices in their cells. They may also celebrate the two solstices and two equinoxes that take place each year with a special meal.

7. Purification lodges have been established at three (3) of the DOC's eighteen (18) facilities, i.e., MCI-Norfolk, MCI-Shirley, and the North Central Correctional Institution. DOC policy requires that an outside Native American volunteer be present at all purification lodge ceremonies to lead and provide supervision.

8. On June 12, 2009, Giorgio sent a letter to Director Duxbury seeking access to Native American ceremonial items, specifically requesting a "smudge pot/shell, white sage and sweet grass." Giorgio's letter also stated that he wanted to attend the annual Wampanoag pow-wow scheduled for June 28, 2009 in Canton, MA.

9. Giorgio's June 12, 2009 request to attend the annual Wampanoag pow-wow was denied based on operational and security needs.

10. A June 27, 2009 search of Giorgio's and Traver's cell revealed bird feathers not listed on either inmate's property inventory. The feathers were confiscated by staff.

11. On June 28, 2009, Giorgio sent a letter to Director Duxbury expressing his "discontent" over the confiscation of his and Traver's "ceremonial prayer feathers."

12. On July 9, 2009, Giorgio submitted inmate grievance #41559 requesting the

return of his prayer feather and the smudging items previously requested in his June 12, 2009 letter. Giorgio's grievance referred to the fact that prayer feathers were permitted for Native American corporate worship under the DOC's Religious Services Handbook.

13. On July 9, 2009, Traver submitted inmate grievance #41560 requesting the return of his prayer feather and "community [sic] participation in inmate religious activities." Traver's grievance also referred to the fact that prayer feathers were permitted for Native American corporate worship under the DOC's Religious Services Handbook.

14. On July 21, 2009, PCC's Institutional Grievance Officer ("IGO") David Clary approved grievances #41559 and #41560, stating that plaintiffs' access to the smudging items had been approved and the smudging items were on order.

15. On or about July 29, 2009, PCC Treasurer, Linda Hightower, at the request of Director Duxbury, placed an order for a smudge pot/shell, a smudging refill kit and a sweet grass braid with the DOC's canteen provider, Keefe Commissary Network ("Keefe"). On or about August 4, 2009, PCC received the items. On August 4, 2009, subsequent to PCC's receipt of the smudging materials, PCC Treasurer Hightower forwarded a check in the amount of $17.98 to Keefe to pay for the materials.

16. The smudging items purchased from Keefe were stored in Director Duxbury's office.

17. Subsequent to the IGO's decision on grievance #41559, Giorgio did not file an appeal or any further grievances. Nor does he recall sending any further correspondence to PCC officials regarding his access to smudging items or other Native American practices at PCC.

18. Subsequent to the IGO's decision on grievance #41560, Traver did not file an appeal or any further grievances. Nor does he recall sending any further correspondence to PCC officials regarding his access to smudging items or other Native American practices at PCC.

19. Giorgio possessed several books on Native American practices, including "Black

Elk Speaks," "Lakota Way," "Sacred Pipe," and "The Mighty Chieftans."

B. Additional Material Facts

After the smudging materials were ordered and received by MCI-Pondville, they were not given to Plaintiffs, but instead were stored in Duxbury's file cabinet. Doc. No. 77-5 at 23. In his affidavit, Giorgio states that he was "informed that I would not receive these items and that my pre-release employment would also be in jeopardy if I pushed this issue." Doc. No. 77-1 ¶ 10. Nowhere, however, does he say who threatened his pre-release employment.

Traver states in his affidavit that Duxbury refused to furnish him with the smudging materials. Doc. No. 77-2 ¶ 10. He further states he did not pursue the issue for fear of being placed off of pre-release status, and he was told by numerous officials, including Duxbury, not to "pursue the Native American worship issue." Id. ¶ 11. At his deposition Traver testified as follows:

> Q: Okay. Did Steven Duxbury make any threats to you regarding returning to higher security?
> A: Following the grievance, he pretty much said that he would not accommodate us at that facility. It wasn't worth his time.
> Q: But did Steven Duxbury threaten to send you to higher custody?
> A. No.
> Q: If you pursued making—
> A. No. He said he wouldn't accommodate us at that facility.
> Q: He said he would not give you the smudging supplies?
> A: Correct.

Doc. No. 77-4 at 11.

Finally, at his deposition Traver testified that Duxbury told him the MCI-Pondville would not start a Native American worship program, but they would "pacify" him with grievances saying they were approved. Doc. No. 77-4 at 9. As to Jackson, however, neither Giorgio nor Traver state in their affidavits or at deposition that she refused upon being asked to provide the smudging materials, or that she ever threatened them in any manner.

V.	DISCUSSION

A. Plaintiffs' First Amendment Claim

Plaintiffs bring claims against the Defendants for violation of their First and Fourteenth Amendment Rights to free exercise of their religious beliefs pursuant to 42 U.S.C.A. § 1983.[4] The issue before the Court is whether Defendants are entitled to qualified immunity as to Plaintiffs' §1983 claims. In order to decide whether a public official is entitled to qualified immunity,"[a] court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson, 555 U.S. at 232). "To overcome qualified immunity, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (internal citation and quotation marks omitted).[5] "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (internal citations and quotation marks omitted). Thus, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." Id. (internal citation omitted).

---

[4] 42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
[5] Courts need not determine whether a right has been violated before proceeding to the dispositive question of whether that right is clearly established. Cryer v. Mass. Dep't of Corr., 763 F. Supp. 2d 237, 251 (D. Mass. 2011) (citing Pearson, 555 U.S. at 236).

Plaintiffs argue they had a clearly established right to: (1) keep ceremonial prayer feathers in their cells without declaring them on their property inventories; (2) attend off-site pow-wows; (3) engage in purification lodge ceremonies; and (4) obtain their approved smudging materials and engage in smudging ceremonies. The Court addresses each alleged right, in turn, and whether that right was "clearly established" at the time of the alleged violation.

### a. Prayer Feathers

Plaintiffs argue the confiscation of their prayer feathers from their cells was a violation of 42 U.S.C. § 1983. Doc. No. 77 at 3. In support of their argument, they seek to rely on the Department of Corrections' Religious Services Handbook, which allows inmates to use ceremonial feathers for corporate worship. Id. The Handbook states:

> Corporate worship prayer feathers [crow, hawk, raven or eagle feather (only if an inmate has the appropriate documentation authorizing him/her to purchase eagle feather)] shall be maintained in institutional storage and shall be used during corporate worship ceremonies only. Individual inmates may also purchase one (1) prayer feather [crow, hawk, raven or eagle feather (only if an inmate has the appropriate documentation authorizing him/her to purchase eagle feather)] for in-cell worship. Corporate worship prayer feathers will continue to be accessible during corporate worship.

Doc. 66-1 at 79.

While the Handbook authorizes inmates to purchase prayer feathers for individual use, it does not entitle them to keep the feathers in their cells without declaring them on their property inventory. To the contrary, 103 Mass. Code Regs. 403.12(1) states that, "[i]f an inmate fails to show proof of ownership, said property shall be considered contraband unless the property has been previously recorded on the inmate's property inventory." Under this regulation, Plaintiffs do not have a right to keep a feather, or any other property, in their cells before recording it in their property inventory. Neither Plaintiffs' property list identified the feathers. The Plaintiffs make no argument that 103 Mass. Code. Regs 403.12(1) is not based upon valid penological

objectives or is otherwise unconstitutional. Whatever constitutional rights to practice their religion Plaintiffs possess, the DOC retains authority to impose restrictions based on "valid penological objectives." O'Lone v. Shabass, 482 U.S. 342 (1987). Therefore, Plaintiffs have not established a constitutional right let alone a violation of a clearly established right. Defendants' Motion for Summary Judgment is ALLOWED as it relates to the prayer feathers in Plaintiffs' cells.

### b. Off-Site Pow-Wows

Plaintiffs' expressly recognize that refusing their request to attend an off-site pow-wow might be reasonably related to a legitimate penological interest. Doc. No. 77 at 6. Thus, they have waived this claim. In any event, it is clear that attendance at off-site pow-wows was not a clearly established right. See Cruz v. Scribner, No. CV-F-06-1877 AWI DLB P, 2007 WL 2904229, at *2 (E. D. Cal. Oct. 3, 2007) (upholding denial of request to attend powwow because it did not constitute intentional discrimination); Hastings v. Marciulionis, 434 F. Supp. 2d 585, 587-88 (W. D. Wisc. 2006) (affirming refusal to allow Native American inmate to attend pow-wow did not violate First Amendment). Defendants are entitled to qualified immunity as to their claim relating to attendance at off-site pow-wows. Defendants' Motion for Summary Judgment is ALLOWED as it relates to the off-site pow-wows.

### c. Sweat Lodge Ceremonies

Plaintiffs do not dispute the facts set out by the Defendants relating to the concerns for safety and security raised by a purification lodge at MCI-Pondville, including the risk of fire and indoor environmental hazards created by smoke from the open pit wood fire used to heat the rocks for the lodge ceremonies. Doc. No. 66-1 ¶¶ 9-10. Plaintiffs' sole argument is that other

facilities afforded inmates the opportunity to engage in sweat lodge ceremonies.[6] Notably, however, in Cryer v. Spencer, 934 F. Supp. 2d 323, 332 (D. Mass. 2013), Judge Saris of this Court, denied an inmate's request for injunctive relief seeking access to a purification lodge because of the prison's concerns for safety and security. I find Judge Saris' decision persuasive. Defendants' Motion for Summary Judgment is ALLOWED as it relates to the sweat lodge ceremonies.

### d. Smudging Ceremonies and Related Materials

The test for qualified immunity, as articulated by the First Circuit in Maldonado, not only "focuses on the clarity of the law at the time of the alleged civil rights violation," but also "focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. Indeed, '[i]t is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Maldonado, 568 F.3d at 269 (internal citation omitted). Here, there is no dispute that Plaintiffs' July 9, 2009, grievance as to his request for smudging materials was allowed on July 21, 2009, and that Plaintiffs were advised that the smudging materials were on order. Doc. No. 66 at 3. Nor do plaintiffs dispute the fact that MCI-Pondville received the smudging materials on or about August 4, 2009. Id. Likewise, there is no dispute that Plaintiffs were not given the smudging materials, but that they were stored in Duxbury's office. Id.

However, neither Giorgio nor Traver submit any evidence suggesting that Jackson refused to give them the materials, or that she threatened them if they asked. This is of particular import because "'only those individuals who participated in the conduct that deprived the

---

[6] Giorgio did not request access to a sweat lodge at MCI-Pondville.

plaintiff of his rights can be held liable.'" Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)). As such, even with all inferences drawn in favor of the Plaintiffs, Defendants' Motion for Summary Judgment as to Jackson, is ALLOWED.

This then leaves Plaintiffs' claim for violation of their constitutional rights against Duxbury as it relates to the smudging materials and smudging ceremony. Defendants do not dispute that Plaintiffs' right to practice their religion was clearly established or that the religion Plaintiffs sought to practice is a religion within the meaning of the First Amendment. And, under DOC's regulations smudging is allowed during corporate worship, Doc. No. 66 at 10; Doc. No. 66-1 at 94; see also, Blake v. Howland, No. 20050-0497C, 2009 Mass. Super. LEXIS 363, at 25 (Mass. Sup. Ct. 2009) (inmate had access to corporate smudging ceremony), although inmates are not permitted possession of smudging materials outside of corporate worship ceremonies. Doc. No. 66-1 at 94.

Plaintiffs' factual submissions, drawing all reasonable inferences in their favor, support the conclusion that they were denied access to the smudging materials: "subsequent to the allowance of my grievance I spoke with Steven Duxbury about being furnished the requested smudging materials. Mr. Duxbury told me that he was not going to furnish us with the smudging materials." Doc. No. 77-2 ¶ 10. Defendants first contend that Plaintiffs failed to grieve this denial as required under the Prison Litigation Reform Act. The Court disagrees. The allowance of the original grievance constituted implicit, if not explicit, approval of Plaintiffs' rights to use the smudging materials in a worship ceremony.[7] Given Duxbury's role and the sweeping nature

---

[7] At the hearing on the motion, both counsel conceded that a person practicing Native America religious practices could use the smudging materials alone or in group worship.

of his denial, according to Traver's affidavit, nothing more was required. This is not the situation where one officer or shift commander prohibited smudging worship on his watch, or the denial of use of the materials for a particular date/time-- both of which might require Plaintiffs' to grieve the denial before filing suit.

Traver's under oath statement creates a genuine issue of material fact regarding whether Duxbury prohibited use of the smudging materials or whether Plaintiffs merely never requested access to them as Duxbury contends. There is no evidence of the reason for the denial. That is, Duxbury presents no argument that valid penological reasons supported this blanket denial. In these circumstances, the Court DENIES the Defendants' Motion for Summary Judgment as to Duxbury on this issue.[8]

### B. RLUIPA

Plaintiffs bring claims under RLUIPA, 42 U.S.C. §2000cc-1(a),[9] against Jackson and Duxbury in their individual capacity only and seek only money damages. Am. Compl. ¶ 10. As noted in Cryer, 934 F. Supp. 2d at 332, the First Circuit has declined to address the issue of whether monetary damages are available against a defendant sued in his individual capacity. Those Circuits which have addressed the issue—the Third, Fifth, Seventh, Tenth and Eleventh— have held that monetary damages are not available against a defendant sued in his individual capacity. Id. (cases collected). The court in Cryer "align[ed] itself with the majority of appellate courts holding RLUIPA does not provide for monetary damages against defendants in their individual capacities, as the bases for that conclusion are sound." Id. Cryer is persuasive.

---

[8] The facts in the text supporting the Court's analysis are contested by Defendant. The Court makes no judgment on the strength of Plaintiffs' claim, only that viewing the facts in the light most favorable to the non-moving party as the law requires results in denial of the motion.
[9] "RLUIPA 'protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.'" Cutter v. Wilkinson, 544 U.S. 709, 721 (2005) (footnote omitted).

Plaintiffs' claim for monetary damages for any purported violation of RLUIPA fails as a matter a law. And, because Plaintiffs do not seek injunctive relief, Defendants' Motion for Summary Judgment as to their claims for violation of RUIPA is ALLOWED.

## CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment is DENIED as to Plaintiffs' claim against Steven Duxbury for violation of the First and Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983, but only as to the claim related to the smudging materials and participation in corporate smudging ceremonies. Defendants' Motion for Summary Judgment (Doc. No. 65) is ALLOWED in all other respects. Plaintiffs' Motions for Partial Summary Judgment are DENIED (Doc. Nos. 78 & 79). The clerk will schedule an initial pre-trial conference.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge